Michael Machat, Esq. (SBN 109475)
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com

Attorneys for Plaintiff
Vampire Family Brands, LLC

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CRAVE, INC., THE TJX COMPANIES, INC., MARSHALLS OF CALIFORNIA, LLC, HOMEGOODS, LLC, and DOES 1 – 20,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff VAMPIRE FAMILY BRANDS, LLC hereby alleges and asserts:

## I. <u>JURISDICTION AND VENUE</u>

1. Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

2. This action arises under the Trademark Laws of the United States, including Section 43 of the Lanham Act, 15 U.S.C. Section 1125. Jurisdiction is

conferred on this Court by 15 U.S.C. Section 1121(a) and by 28 U.S.C. Section 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.* Venue is proper in this District under 28 U.S.C. Section 1391(b) since a substantial part of the events or omissions giving rise to the claims herein occurred within this district.

## II. THE PARTIES

3. Plaintiff VAMPIRE FAMILY BRANDS, LLC ("VAMPIRE FAMILY BRANDS" or "Plaintiff") is a Delaware Limited Liability Company with its main business office located in Los Angeles County, California.

4. Defendant Crave, Inc. ("Crave, Inc") is, upon information and belief, a California Corporation with its head office in Sebastopol, CA.

5. Defendant TJX Companies, Inc. ("TJX") is, upon information and belief, a Delaware Corporation. TJX is a retailer of off-price merchandise, and it operates the following stores: TJ Maxx, Marshalls, HomeGoods, and AJ Wright. Upon information and belief there are approximately 1100-1200 TJX owned stores nationwide.

6. Defendant Marshalls of California, LLC ("Marshalls of CA") is upon information and belief, a Virginia Limited Liability Company operating throughout California and owned by Defendant TJX.

7. Defendant HomeGoods, LLC ("HomeGoods) is upon information and belief a Delaware Limited Liability Company operating throughout the United States, including California, and is owned by Defendant TJX.

8. Plaintiff does not know the true names or capacities of defendants named herein as DOES 1 through 20 inclusive and therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names, capacities, and circumstances alleging the liability of said defendants at such time as the same is ascertained. Plaintiff is informed and believes and, on that basis, alleges that each fictitiously named defendant is responsible in some

manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by the conduct of such defendants.

9. Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, each of the defendants sued herein, were the agents, servants, employees or attorneys of their co-defendants, and in doing the things hereinafter alleged were acting within the purpose, course and scope of such agency and employment, and with the authority, permission and consent of their co-defendants.

## III. FACTS GIVING RISE TO THIS ACTION

### A. Plaintiff's Vampire Family Trademarks

10. Vampire Family Brands, via its predecessors in interest, has been marketing for many years food and beverages under several federally registered trademarks consisting of or relating to the terms VAMPIRE and DRACULA (collectively, the "Vampire Family marks"). The Vampire Family marks include the following federal registrations, many of which are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065:[1]

| **Mark** | **Reg. No.** | **Goods/Services** |
|---|---|---|
| VAMPIRE | 2263907* | Wine |
| | 3290011* | Glass- and beverage-ware |
| | 3669827* | Coffee and chocolate |
| | 3978444* | Restaurant and bar services |
| | 4776927 | Olive oil and balsamic vinegar |

[1] Plaintiff's marks that have become incontestable are denoted by an asterisk (*) following their U.S. Registration Numbers.

| | | |
|---|---|---|
| | 5444375 | Pre-mixed alcoholic beverages, other than beer based; pre-mixed alcoholic cocktails |
| | 6329522 | Hamburger sandwiches |
| VAMPIRE TACO | 4939034* | Tacos |
| VAMPYRE | 3082097* | Distilled spirits |
| VAMPYRE | 7151997 | Tea |
| DRACULA | 3319536* | Wine |
| | 6562370 | Hamburger sandwiches |
| DRACULA'S DAUGHTER | 7853075 | Wine; Alcoholic beverages, except beer; Sparkling wine |
| FANGRIA | 4451648* | Sangria; wine |
| VAMPIRO | 7770178 | Wine |
| VAMP | 8147317 | Non-alcoholic drinks, namely energy shots |

11. The origin of Vampire wine, and Vampire Family Brand's claim of right, goes back to 1988, when its founder released a French-bottled Algerian Syrah under the brand name Vampire. The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine." Vampire Family Brand's predecessors in interest began to use the slogan "Taste of Immortality" by at least 1995. Although the labels have changed over the years, along with the sourcing from Algeria to Italy and then to Transylvania and, finally, to Napa, the marketing has remained similarly playful.

12. However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was extremely good, with Vampire wine having won many gold medals throughout the years and scores of 90 Points and higher from various critics.

13. Plaintiff, via its predecessors in interest, later expanded its wine and spirits business into energy drinks, soft drinks, coffee and other gourmet quality foods, including Vampire Gourmet Chocolate, Vampire Fine Belgian Chocolate, Vampire Gourmet Olive Oil, and Vampire Gourmet Balsamic Vinegar.

14. In 2011, Plaintiff's predecessor in interest opened a wine bar called the Vampire Lounge & Tasting Room in Beverly Hills, California. Shortly thereafter, it obtained a trademark for VAMPIRE for restaurant and bar services.

15. In 2020, Plaintiff expanded its use of the VAMPIRE trademark for restaurants when it licensed its VAMPIRE mark to the New Orleans Vampire Café, which opened January 1, 2021. The Vampire Café sells all of Plaintiff's VAMPIRE branded wine varietals; all of Plaintiff's DRACULA branded wines, including its DRACULA Red Blend and DRACULA'S DAUGHTER Prosecco Rose; Plaintiff's VAMPYRE vodka and tequila; Plaintiff's FANGRIA sangria; Plaintiff's Vampire Absinthe RTD Cocktails, and Plaintiff's VAMPIRE Chocolate. Plaintiff's VAMPIRE Coffee is the house coffee. The Vampire Café also serves two styles of burgers, branded as the VAMPIRE Burger and the DRACULA Burger.

16. Plaintiff's VAMPIRE family of brands are available for the world to see on its website www.Vampire.com. The brands have been featured and covered in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, the Star Tribune, the Chicago Sun Times, and many more. In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper (with Ashley Greene from

Twilight fame), CNN Headline News, MTV's Viva La Bam, Food TV, and many more. (*See* Exhibit C).

17. Plaintiff markets its brands through a national network of wholesalers and via www.Vampire.com direct to consumers. VAMPIRE wines are sold nationally for under $20 per bottle at retail stores. VAMPIRE wines also are available in bars and restaurants on wine lists. DRACULA wines are sold for under $30.00 per bottle. VAMPIRO sells for under $30 per bottle. VAMPIRE coffee sells for under $20 per bag and VAMP energy shots sell for a few dollars each.

18. Plaintiff's branded products are sold nationally in retail chains stores, in bars and restaurants, online and elsewhere.

19. Plaintiff's family of Vampire products are sold nationally direct to consumers from Plaintiff's website, www.vampire.com.

20. Plaintiff has spent hundreds of thousands of dollars advertising its Vampire Family of products on Facebook and Instagram and has developed a very large following of fans who have given the brand hundreds if not thousands of great reviews.

21. Plaintiff and its associates have worked hard to ensure that they put the best products in the bottle as possible. Over the last few years, Plaintiff's Vampire family of wines and spirits have received great reviews and won gold medals in many competitions, including the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, and Vampire Pinot Noir; the Los Angeles Invitational Wine challenge for its Vampire Cabernet Sauvignon and Vampire Pinot Noir; the Access Live Wine & Spirits Tasting Competition for its Vampire Merlot; and the Texas International Rodeo Wine Competition. Further, the Los Angeles International Wine & Spirits Competition gave Vampire Cabernet Sauvignon a rating of 92 points out of 100. Plaintiff's highest-end wine, Trueblood Cabernet Sauvignon, has been rated 92 points and 97 points out of 100 by critics.

Plaintiff's Dracula's Daughter Prosecco Rose was awarded a platinum award and 98 points at the Las Vegas International Wine Competition.

22. Plaintiff also sells canned ready-to-drink cocktails, such as its VAMPIRE Absinthe Spirits RTD, a 9% alcoholic beverage product by volume that was rated 95 Points, awarded a gold medal and voted best in class by the Beverage Tasting Institute.

23. Plaintiff has spent and continues to spend hundreds of thousands of dollars advertising its Vampire family of brands on Facebook, Instagram and Google.

24. Plaintiff has spent and spends substantial amounts of time and money establishing, advertising, and promoting its Vampire family of brands. Plaintiff has established valuable goodwill through its brands' popularity, its advertising and sales, and its websites (including www.Vampire.com). This goodwill is embodied by Plaintiff's Vampire Family marks.

25. Plaintiff's expansion plans include a further foray into the ready-to-drink market, including a Vampire margarita and a Vampire vodka-based cocktail. Plaintiff has sold Vampire ready-to-drink Bloody Marys as well.

26. Plaintiff offers its coffee for sale on its Vampire.com website and on Amazon.com, and it advertises its VAMPIRE COFFEE on Facebook and Instagram. Expansion plans include the release of VAMPIRE Coffee cold brew in cans and other non-alcoholic beverages under the VAMPIRE brand.

27. Plaintiff's natural zone of expansion includes other beverages, including both alcoholic and non-alcoholic, in addition to foods and beverages, such as hot sauce, barbecue sauce, water, beers, and other restaurant venues. Plaintiffs have plans for each of these.

**B. Defendants' Unauthorized Use of Plaintiff's Vampire Family Marks**

28. Defendant Crave, Inc. owns trademarks of its own, including the registered trademark ZEROLICIOUS which it uses to brand syrups for use to make

cocktails. Presumably Crave choose its ZEROLICIOUS mark because it wants the public to believe its drinks are delicious and have zero calories.

29. Its website emphasizes that their syrups have zero sugar and zero fats. Its website neglects to say that it has stolen Plaintiff's VAMPIRE trademark so it can attract attention to its business and its orange and cranberry syrup in particular: https://zerolicioussyrups.com/products/vampire-punch.

30. Defendant Crave offers and sells its good direct to consumers throughout the United States via its website: https://zerolicioussyrups.com using the Shopify platform, like Plaintiff, to sell from.

31. Besides selling its products directly to consumers, Crave also sells its products, including the accused product to retail stores throughout the United States, including to Defendants TJX, HomeGoods and Marshalls of CA.

32. Like Defendant Crave, Defendant HomeGoods also has a trademark. Its main trademark is simply HOMEGOODS which it presumably chose to let the public know they sell goods for one's home.

33. Recently Plaintiff was contacted by a consumer who happened to be shopping at a HomeGoods store in Massachusetts, who inquired if an item named VAMPIRE PUNCH, pictured below as Exhibit A ("the accused product"), was one of Plaintiff's brands.

34. Plaintiff sells many brands under its VAMPIRE branding, both alcoholic and non-alcoholic. A collection of Plaintiff's brands can be found below as Exhibit B ("VFB's authentic products").

35. Plaintiff soon learned that HomeGoods is selling the accused product for $4.99.

36. Upon seeing the images of the confusingly similar product, Plaintiff googled the accused product and discovered it was being produced by Defendant Crave, and resold to the public by Defendants TJX and Marshalls of CA.

37. Plaintiff ordered a bottle of the accused product off Defendant Crave's website which offered it for sale for approximately $9.99 per bottle plus tax plus $9.99 shipping.

38. After seeing the accused product on social media including Facebook and Instagram (both owned by Meta), Plaintiff visited one of Defendant Marshalls of CA, owned by Defendant TJX, and purchased a bottle of the accused product for $4.99 plus tax.

39. Defendants' accused product is intended for making cocktails.

40. Plaintiff sells ready-to-drink cocktails, including its gold medal winning, 95-point rated Vampire Absinthe Cocktail.

41. Plaintiff sells Vampyre Vodka and Vampyre Tequila and Vampire Absinthe, each of which is commonly used by consumers with mixers to create a cocktail. Plaintiff plans on selling other Vampire ready-to-drink cocktails, including a Vampire Espresso Martini cocktail made with Plaintiff's Vampyre Vodka and Vampire Coffee.

42. Plaintiff advertises its wines and spirits and coffee and chocolate on Facebook and Instagram, the same marketplace defendants are selling and advertising its infringing product. Moreover, Google searches for Plaintiff's branded name reveal Defendants' infringing product.

43. Defendants continue to unlawfully promote, advertise, market and sell its infringing Vampire Punch from its website, and from retail brick and mortar stores.

44. Plaintiff has spent substantial amounts of time and money building up, advertising, and promoting its brands. By virtue of the popularity of its brands, its advertising, promotion, and sales, plus the popularity of its websites, including vampire.com, Plaintiff has built up and owns extremely valuable goodwill which is symbolized by Plaintiff's various marks.

45. Defendants' intentional wrongful acts are harming Plaintiff's brands reputation and are diluting the brands and are disparaging.

46. If Defendants are not stopped from marketing the infringing Vampire Punch using Plaintiff's Vampire mark, then consumers will likely be confused about the source and origin of defendants' products and mistakenly conclude that defendants' products are produced by, or associated with, Plaintiff and/or its licensees.

47. Alternatively, if defendants are not stopped from marketing beverages using Plaintiff's Vampire mark, then consumers will likely be confused about the source and origin of Plaintiff's (or its licensees') products and mistakenly conclude that Plaintiff's (or its licensees') products are produced by, or associated with, defendants.

## COUNT I
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

48. Plaintiff realleges the allegations in paragraphs 1 though 47.

49. Collectively, Defendants have abundantly large resources with which to market and advertise its goods and services. (TJX is a publicly traded company with a market cap of approximately 145 billion dollars.) Defendants' resources vastly exceed those of Plaintiff. Consequently, Defendants' marketing and advertising efforts are likely to mislead consumers into believing that Plaintiff's goods and services may be unauthorized use of trademarks that Crave owns and TJX and its co-defendants sell and market. If defendants are able to continue their wrongful acts, consumers are likely to be misled to believe that Plaintiff is misusing the VAMPIRE mark.

50. Also, Defendants' use of the word VAMPIRE on its product, so closely resembles Plaintiff's products and services (including Plaintiff's Vampire RTD Cocktail) that the public is likely to be confused and deceived, and to assume erroneously that defendants' goods are those of Plaintiff, or that defendants are in

some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

51. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by defendants.

52. Plaintiff has no control over the nature and quality of the goods and services offered and sold by defendants or its licensees. Any failure, neglect, or default by defendants or its licensees in providing such products or services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's efforts to continue to protect its outstanding reputation and preventing Plaintiff from further building its reputation. Said failure, neglect, or default will result in loss of revenue by Plaintiff, and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the VAMPIRE mark, all to the irreparable harm of Plaintiff.

53. In fact, the defendants' sales, marketing and promotion of its infringing Vampire Punch on Meta platforms and other social media interferes with and hampers Plaintiff's ability to market and promote its products on Meta and elsewhere.

54. Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name VAMPIRE and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and/or sold, products and services using the VAMPIRE mark through persons not authorized, employed by, or associated in any way with Plaintiff and have used the aforementioned trade name and trademark as a false designation and false representation for food products.

55. None of defendants' activities complained of in this complaint have been authorized by Plaintiff, and such unauthorized use by Defendants of Plaintiff's

trademarks and/or trade names in interstate commerce, commerce substantially affecting interstate commerce in this district, and elsewhere throughout the United States, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names, and such activities are likely to cause confusion, mistakes, and to deceive the public at large.

56. Upon information and belief, Defendants have acted with the unlawful purpose of:

a. Improperly taking advantage of the valuable goodwill belonging to Plaintiff;
b. Soliciting Plaintiff's customers and/or potential customers, attempting to sell, and selling to such customers and potential customers, goods and services marketed under the VAMPIRE mark through persons and companies not authorized by, employed by, or associated in any way with Plaintiff;
c. Inducing others to infringe Plaintiff's trademarks and trade names; and
d. Causing the goods of persons or companies not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

57. Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

58. If Defendants are allowed to continue marketing and selling the accused goods, Plaintiff will be damaged as alleged in this complaint, and the Defendants will profit thereby. Furthermore, unless the Court permanently enjoins Defendants conduct as alleged in this complaint, Plaintiff's business, goodwill, and reputation

will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

59. Defendants have hijacked Plaintiff's Vampire trademark. Hijacking Plaintiff's Vampire trademark improved the relevance of ads on searches that included "Vampire" keywords and made defendants' punch intended for cocktails more interesting to potential buyers, leading to greater sales than if they didn't use Plaintiff's Vampire trademark. It leads to more people hearing about defendants' infringing accused product, leading them to come in and buy defendants' infringing accused product and other products as well while the consumers were in the store or shopping on defendant's website. Hijacking Plaintiff's mark lowered defendants' costs of advertising while improving defendants' sales and profits.

60. Defendants' aforementioned acts and conduct is being done willfully and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Plaintiff is therefore entitled to treble damages arising therefrom, disgorgement of defendants' profits, as well as reimbursement of Plaintiff's attorneys' fees and costs.

61. The intentional nature of defendant's acts makes this an exceptional case under 15 U.S.C. §1117(a).

62. The intentional nature of defendants' acts and conduct make this a case suitable for an award of Three Times Defendants' profits plus attorneys' fees.

## COUNT II

## VIOLATION OF LANHAM ACT 15 U.S.C. §1114

**(Against All Defendants)**

63. Plaintiff repeats each allegation contained in paragraphs 1 through 62 as though set forth herein at length.

64. Despite having trademarks of their own, and despite knowing the importance of having registered trademarks of their own and taking steps to protect

their own trademarks, Defendants nevertheless have intentionally decided to infringe Plaintiff's registered trademarks.

65. As alleged herein, Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered marks.

65. Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, to be deceived, and to erroneously assume that Defendants' marketing and sale of their VAMPIRE branded goods as packaged, advertised and promoted, are those of Plaintiff, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

66. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff. Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

67. Defendants aforesaid infringing conduct has been willful and sold and offered for sale, marketed and advertised by Defendants with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their Vampire branded infringing product will hinder the prospects of future commercial success of Plaintiff's VAMPIRE family of brands, including its future expansion of Plaintiff's family of brands. Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment as follows:

1. That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

2. That the Court adjudge and decree that Defendants have infringed Plaintiff's registered trademarks willfully and intentionally.

3. That the Court adjudge and decree that Defendants unlawfully induced others to infringe upon Plaintiff's trademarks.

4. That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or with any of them from:

a. Using VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, (including Dracula), trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of beverage products and beverage accessories;

b. Selling, offering to sell, marketing, distributing, advertising and/or promoting any beverage product, goods or service with the word VAMPIRE or DRACULA displayed on any product, packaging, advertising or promotional materials;

c. Representing directly or indirectly by words or conduct that any beverage product, goods or services offered for sale, sold, promoted, or advertised by Defendants, is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

d. Aiding or abetting in unfair competition against Plaintiff;

e. Aiding or abetting in false advertising; and

f. Inducing others to engage in any of these aforementioned acts.

5. That the Court award an amount to be determined at trial but at least an

amount equivalent to treble the amount of Defendants' illicit profits (including profits made by the defendants from sales of other products since they used Plaintiff's mark as a loss leader) or Plaintiff's damages, whichever is greater.

6. That the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising to cover a national campaign that would generate at least ten times the number of impressions of defendant's unlawful promotional campaign which would cover the cost of the corrective advertising necessary to make up for the damage done by defendants' advertising and promotion to Plaintiff's brands.

7. That the Court award Judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

8. That the Court Order such other, further and different relief as the nature of this action may require and as the Court may deem just and proper.

9. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

Respectfully submitted,
MACHAT & ASSOCIATES, P.C.

Dated: September 7, 2026

By: /s/Michael Machat

Michael Machat, Esq.
Attorneys for Plaintiff
Vampire Family Brands, LLC

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues raised by the Complaint.

Respectfully submitted,
MACHAT & ASSOCIATES, P.C.

Dated: September 7, 2026

By:*/s/Michael Machat*
Michael Machat, Esq.
Attorneys for Plaintiff